IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ETHEL D. HUDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:14-cv-272-TFM |
| ) | [wo] |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Ethel D. Hudson ("Plaintiff" or "Hudson") applied for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act), 42 U.S.C. § 1381 *et seq.* After her application was denied at the initial administrative level, Hudson requested and received a hearing before an Administrative Law Judge ("ALJ"), who rendered an unfavorable decision on October 5, 2012, finding Hudson not disabled from the alleged amended onset date of January 1, 2012, through the date of the decision. Hudson appealed to the Appeals Council, which rejected review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for the reasons herein explained, the Court AFFIRMS the Commissioner's decision.

**I.  NATURE OF THE CASE**

Hudson seeks judicial review of the Commissioner's decision denying her application

for supplemental security income benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.3d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. § 405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla--i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court

will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 335 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 796 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1223, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[1] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2] Eligibility for SSI is based upon proof of indigence and disability. See 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir.1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. See 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one

---

[1]DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_ Home/handbook/handbook.html

[2]SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment(s) severe?
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. RFC is what the claimant is still able to do

---

[3]This subpart is also referred to as "the Listing of Impairments" or "the Listings."

despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. THE ISSUES

### A. Introduction

Hudson was 44 years old at the time of the hearing before the ALJ, and she had completed the ninth grade of high school. R. 59. Her past relevant work experience was as a babysitter. R. 60. She alleges she became disabled beginning on January 1, 2012. R. 57, 170. Following the administrative hearing and employing the five-step process, the ALJ found at Step 1 that Plaintiff had not engaged in substantial gainful activity since February 2, 2011, the application date, which she amended. R. 42, 170 (amended alleged onset date).

---

[4]*See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F . R. § 416.969 (use of the grids in SSI cases).

At Step 2, the ALJ found that Plaintiff suffers from severe impairments of "HIV positive status; insulin dependent diabetes mellitus (IDDM); hypertension; and obesity." R. 44. The ALJ then found at Step 3 that Hudson "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." R. 45. Next, the ALJ found that Plaintiff has the RFC to perform light work with limitations. *Id.* Following the RFC determination and taking into consideration the vocational expert's testimony, the ALJ found at Step 4 that Plaintiff was "unable to perform any past relevant work," R. 48, but the ALJ concluded that a significant number of unskilled light work jobs exist in the national economy that Hudson could perform, including work as a mail machine operator, ticket seller, and office help. R. 49, 74. Accordingly, the ALJ determined that Hudson "has not been under a disability, as defined in the Social Security Act, from February 2, 2011, the date the application was filed." R. 50.

    **B.**    **Plaintiff's Claim**

In her brief, Hudson presents only one issue for review, that is, whether Hudson submitted new and material evidence to the Appeals Council sufficient to support a remand. Pl.'s Br. (Doc. 12) at 4; R. 424-38 (additional evidence).

### V. DISCUSSION

Hudson argues that new evidence submitted to the Appeals Council which was additional evidence not considered by the ALJ provides additional support for her testimony at the hearing regarding her rash symptoms. Pl.'s Br. (Doc. 12) at 4. The Appeals Council

stated that it "considered the additional evidence," but it ruled "that this information does not provide a basis for changing the Administrative Law Judge's decision." R. 1-2. Hudson argues the case should be remanded because there is a reasonable possibility that the new evidence could result in a different decision at the administrative level. Pl.'s Br. 4; *see Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011) ("new evidence is material, and thus warrants a remand, if 'there is a reasonable possibility that the new evidence would change the administrative outcome'" (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)).

The evidence includes 22 pages of medical records for two visits by Hudson to the emergency room at L.V. Stabler Memorial Hospital on December 24, 2011, and December 29, 2011. R. 5-6, 424-38 (Ex. 15F). On December 24, 2011, Hudson presented to the emergency department with "itching all over" and "bumps all over." R. 431. She was treated for itchy skin and rashes on her extremeties, face, and trunk. R. 431. A day before her symptoms began, she started taking hydrochlorothiazide ("HCTZ"). R. 431. She was diagnosed with puritis and acute allergic reaction to HCTZ. R. 432. She was treated with Solu-Medrol and Atarax, instructed to stop taking HCTZ, prescribed Atarax for five days, and discharged. R. 433. She also received instructions to increase water in her diet, monitor her blood sugar more closely, increase insulin if necessary, and return if symptoms increase. R. 433.

Five days later, on December 29, 2011, Hudson returned to the hospital, complaining

of a rash. R. 424. She said the rash seemed worse to her, and the itching was no better. R. 424, 426. She was diagnosed with acute allergic reaction, which the examiner characterized as "papular, urticaria." R. 425. She was treated with Decadron and Benadryl. R. 427-28. She was discharged with prescriptions for a Medrol Dose Pak and Famotidine. R. 427-28.

Hudson argues the new evidence submitted to the Appeals Council is relevant to the nature and severity of her "alleged symptoms and the ALJ's assessment of Plaintiff's credibility regarding the same." Pl.'s Br. 4. At the hearing, Hudson testified that side effects she received from her medicine included "rash, rashes." R. 62. The ALJ found Hudson's testimony partially credible, in part, "in view of the relatively weak medical evidence." R. 47-48. The ALJ's decision referred to Hudson's statement that "her medications cause a rash." R. 46. The decision also refers to January 2012 follow up notes from Montgomery Internal Medicine indicating that her HIV infection was under control and she had "a resolving rash due to her medication." R. 47.

Hudson states, "[t]he medical evidence of record at the time of the hearing documented that Plaintiff had rash from allergy to certain medications." Pl.'s Br. 3 (citing R. 47, 335, 339, 341, 343, 344, 348, 350, 352, 354, 385). The records Hudson cites, however, simply provide a history of medications that cause a rash for Hudson. The medical visits were not to treat rashes, and in each of the visits Hudson had no rash. R. 335, 339, 341, 343, 344, 348-49, 350-51, 352-53, 354-55, 385-86. Consequently, the evidence to which Hudson refers is not relevant to her argument regarding new evidence of an allergic reaction

in December 2011.

The medical records before the ALJ include evidence of the rash, and the records support the ALJ's findings regarding Hudson's credibility. Hudson fails to show the new evidence submitted to the Appeals Council creates a reasonable probability that the ALJ's decision would have changed regarding Hudson's credibility or the medical support for her testimony. The medical evidence before the ALJ includes Hudson's January 9, 2012, visit with Dr. Samant, at the UAB School of Medicine Montomery, Infectious Diseases Clinic, which indicate Hudson "[a]dmits to having allergic reaction to HCTZ. That was discontinued and she is on lisinopril now." R. 348. The notes indicate "[n]o rash" on her skin. R. 349. Consequently, the allergic reaction she reported eleven days earlier, on December 29, 2011, had resolved, and she was no longer taking the medication that caused the reaction. Hudson's medical records from February 20, 2012, again note Hudson "[a]dmits to resolving rash from drug reaction," and note "[n]o rash" on her skin. R. 346-47. The ALJ considered this evidence, and the new evidence does not create a "reasonable possibility that the new evidence would change the administrative outcome." *See Hyde*, 823 F.2d at 459. Moreover, Hudson also fails to demonstrate that the evidence she suffered an allergic reaction to HCTZ and had a rash for a little over two weeks would alter the ALJ's determination, based on substantial evidence, that Hudson could perform light work with limitations. R. 45-46. Accordingly, the Appeals Council did not err in denying review.

## VI.  CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

DONE this 30th day of July, 2015.

>/s/Terry F. Moorer
>TERRY F. MOORER
>UNITED STATES MAGISTRATE JUDGE